UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
MARVIN MILICH,

               Plaintiff,                         **MEMORANDUM AND ORDER**
                                                           10 CV 5991 (DRH) (ARL)
       - against -

STATE FARM FIRE & CASUALTY
COMPANY,

              Defendant.
-----------------------------------------------------------X
**APPEARANCES:**

**FRANK & ASSOCIATES, P.C.**
Attorneys for Plaintiff
500 Bi-County Boulevard
Suite 112N
Farmingdale, New York 11735
By:    Peter A. Romero, Esq.

**WINSTON & STRAWN LLP**
Attorneys for Defendant
200 Park Avenue
New York, New York 10166
By:    Luke A. Connelly, Esq.

**HURLEY, Senior District Judge:**

       Plaintiff Marvin Milich commenced this diversity action against defendant State Farm

Fire & Casualty Company ("defendant" or "State Farm") seeking a declaratory judgment that

"State Farm was required to provide coverage under the homeowners' policy issued to Plaintiff

and to provide Plaintiff with a defense for the worker's compensation benefits claim filed by

Plaintiff's former employee who alleged she was injured while working as Plaintiff's

housekeeper." (Am. Compl. ¶ 2.)  Plaintiff also asserted a claim pursuant to New York General

Business Law ("GBL") Section 349, alleging that defendant "materially mis[led] policyholders,

including Plaintiff, into believing that the Workers Compensation endorsement [to their homeowners' insurance policies] provided coverage for domestic workers." (*Id.* ¶ 40.) Finally, plaintiff asserted a breach of contract claim against defendant based upon its refusal to defend plaintiff against a workers' compensation claim filed against him. (*Id.* ¶ 50.)

Presently before the Court is defendant's motion, made pursuant to Federal Rule of Civil Procedure 12(b)(6), seeking the dismissal of the Amended Complaint in its entirety. Plaintiff has not opposed defendant's motion to the extent it seeks dismissal of his First Claim for Relief (i.e., declaratory judgment) and his Third Claim for Relief (i.e., breach of contract). (Pl.'s Opp'n at 1 n.1.) Accordingly, those claims are dismissed, and the Court need only examine whether plaintiff's Second Claim for Relief, which sets forth his GBL § 349 claim, is adequately pled. For the reasons set forth below, defendant's motion seeking dismissal of this claim is granted.

## BACKGROUND

The following facts are taken from the Amended Complaint, including the attachments thereto,[1] and are presumed true for the purposes of this motion.

Plaintiff is a resident of Dix Hills, New York. Defendant is a corporation existing under the laws of Illinois and is licensed to transact business and issue policies of insurance in New York.

On some unspecified date, defendant issued to plaintiff a homeowners policy of insurance

---

[1] The Court may properly rely on material attached to the Amended Complaint when deciding the instant motion. *See DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). "Pleadings," for purposes of a motion to dismiss under Rule 12(b)(6) "include not just the four corners of the complaint, but also any written instrument attached to it as an exhibit or any statements or documents incorporated by reference." *DeLuca v. AccessIT Grp., Inc.*, 695 F. Supp. 2d 54, 59 (S.D.N.Y. 2010) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002)) (internal quotation marks omitted).

(the "Policy.") (Am. Compl., Ex. A.)  Plaintiff alleges the he purchased the Policy "through Joseph R. Randall of Joseph R. Randall Agency, Inc.," and that Randall was "a State Farm insurance representative." (Am. Compl. ¶ 28.)  According to plaintiff, he advised Randall that "he employed a housekeeper and that he needed full coverage for any potential liability." (*Id.*)  At all relevant times, plaintiff made all premium payments necessary to maintain coverage under the Policy.

The following Policy language regarding defendant's duty to defend and indemnify plaintiff is set forth in "Section II - Liability Coverages":

> COVERAGE L – PERSONAL LIABILITY
>
> If a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage to which this coverage applies, caused by an occurrence, we will:
>
> 1.  pay up to our limit of liability for the damages for which the insured is legally liable; and
>
> 2.  provide a defense at our expense by counsel of our choice.  We may make any investigation and settle any claim or suit that we decide is appropriate.  Our obligation to defend any claim or suit ends when our limit of liability has been exhausted by payment of judgment or settlement.

(Am. Compl., Ex. A at 15.)

On November 12, 2008, plaintiff's "former housekeeper," Icelda DeLeon ("DeLeon"), filed a Workers' Compensation claim against plaintiff, "alleging that she has sustained a work-related injury at Plaintiff's residence." (Am. Compl. ¶ 15.)  Plaintiff received notice of the claim from the New York Workers' Compensation Board on November 18, 2008, and provided "timely notice" of the claim to State Farm. (*Id.* ¶ 17.)  State Farm, however, "refused to provide a

3

defense" for plaintiff, asserting: "There is no coverage for a domestic worker working less than 40 hours . . . ." (*Id.* ¶ 19 & Ex. C.) Plaintiff alleges that as a result of defendant's refusal to provide him with a defense, he was required to retain counsel to represent him in connection with DeLeon's Workers' Compensation claim, thereby incurring "substantial legal fees." (*Id.* ¶ 21.)

## DISCUSSION

### I.     *Legal Standard*

Rule 8(a) provides that a pleading shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has recently clarified the pleading standard applicable in evaluating a motion to dismiss under Rule 12(b)(6).

First, in *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544 (2007), the Court disavowed the well-known statement in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *See Twombly*, 550 U.S. at 561 (quoting *Conley*, 355 U.S. at 45-46) (internal quotation marks omitted). Instead, to survive a motion to dismiss under *Twombly*, a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

4

*Id.* at 555 (citations and internal quotation marks omitted).

More recently, in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court provided further guidance, setting forth a two-pronged approach for courts deciding a motion to dismiss. First, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citing *Twombly*, 550 U.S. at 555).

Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 679. The Court defined plausibility as follows:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* at 678 (quoting *Twombly*, 550 U.S. at 556-57) (internal citations omitted); *see also Ortiz v. City of New York*, 755 F. Supp. 2d 399, 401 (E.D.N.Y. 2010) ("[A] complaint must contain factual allegations to support the legal conclusions and the factual allegations must plausibly give rise to an entitlement of relief.") (internal quotation marks omitted).

## II. Applicable State Law

### A. New York Workers' Compensation Law

New York Workers' Compensation Law requires an employer to secure and provide compensation for certain defined categories of employees in the event that they suffer work-related injuries. N.Y. Workers' Comp. Law § 10(1). An employer can "secure" such compensation by obtaining workers' compensation insurance. *Id.* § 50(2).

A domestic employee[2] is not covered by the provisions of the Workers' Compensation Law unless that domestic employee is "employed by the same employer for a minimum of forty hour per week." *Id.* § 3(1) (Group 12). Thus, a domestic employee who works less than forty hours per week is exempted from the Workers' Compensation Law's rule of mandatory coverage. An employer may, however, voluntarily elect to obtain coverage for such a domestic employee by obtaining workers' compensation insurance for that employee in accordance with Section 50 of the statute,[3] i.e., via a separate workers' compensation policy. *See id.* § 3(1) (Group 19).

---

[2] The parties do not dispute that DeLeon worked as a "domestic employee," as that term is used in the cited provisions of the Workers' Compensation Law, at the time of her injury.

[3] Section 50 of the Workers' Compensation Law provides that an employer may voluntarily secure "compensation to his employees" by, *inter alia*, "insuring and keeping insured the payment of such compensation" either (1) "in the state fund," or (2) "with any stock corporation, mutual corporation or reciprocal insurer authorized to transact the business of workers' compensation insurance in this state through a policy issued under the law of this state." N.Y. Workers' Comp. Law § 50(1), (2).

B.  *New York Insurance Law*

Section 3420(j)(1) of the New York Insurance Law provides that:

> [E]very policy providing comprehensive personal liability insurance on a one, two, three or four family owner-occupied dwelling . . . shall provide for coverage against liability for the payment of any obligation, which the policyholder may incur pursuant to the provisions of the workers' compensation law, to an employee arising out of and in the course of employment of less than forty hours per week, in and about such residences of the policyholder in this state.

N.Y. Ins. Law § 3420(j)(1). The statute makes clear, however:

> No one who purchases a policy providing comprehensive personal liability insurance shall be deemed to have elected to cover under the workers' compensation law any employee who is not required, under the provisions of such law, to be covered.

*Id.*

According to statutory practice commentaries, the purpose of Section 3420(j)(1) of the New York Insurance Law was "to protect the homeowner from unexpected liability when the [Workers' Compensation] Board determines that a person is entitled to benefits whom the homeowner did not believe required coverage." Martin Minkowitz, Practice Commentaries, N.Y. Workers' Comp. § 3 (McKinney 2005). It appears that Section 3420(j)(1) covers only a narrow range of potential beneficiaries, one example being "a minor over the age of 14 who was using a power driven machine, such as a lawnmower, and was injured in the course of such employment." 27 N.Y. Prac., Workers' Compensation § 2:6 (2d ed. 2012). Due to the narrow scope of coverage provided by Section 3420(j)(1), in 2002 the New York Insurance Department issued a directive prohibiting insurers from charging their customers a separate premium for this

mandatory coverage. (*See* N.Y. Ins. Bulletins & Related Materials Circular Letter No. 2002-13, May 24, 2004, attached to the Connelly Decl. as Ex. E.)

While the Court has been unable to uncover any case law directly on this point, statutory practice commentaries state that the coverage mandated by Section 3420(j)(1) of the New York Insurance Law "does not constitute an elective or voluntary coverage as provided in Section 3(1), Group 19 [of the Workers' Compensation Law]. Therefore any person who is not required to be covered for workers' compensation benefits would not be deemed to be covered solely because of the existence of this comprehensive personal liability policy." Minkowitz, Practice Commentaries, N.Y. Workers' Comp. § 3; *see also* 27 N.Y. Prac., Workers' Compensation § 2:6 ("This coverage does not constitute elective or voluntary coverage. Therefore, any person who is not required to be covered for workers' compensation benefits would not be deemed to be covered solely because of the existence of this comprehensive personal liability policy, which incidentally included the provision for this limited workers' compensation coverage.").

Along the same lines, in an administrative opinion dated May 23, 2003,[4] the New York Insurance Department General Counsel concluded that because the Workers' Compensation Law does not cover domestic employees working fewer than 40 hours per week, Section 3420(j)(1) of the Insurance Law "does not require an insurance policy, which provides comprehensive personal liability insurance on a one, two, three or four-family owner-occupied dwelling, to include workers' compensation coverage for a domestic worker who works fewer than forty hours a

---

[4] "It is well established that we defer to an agency's construction of a statute when the interpretation of a statute or its application involves knowledge and understanding of underlying operational practices." *Spagnola v. Chubb Corp.*, 574 F.3d 64, 68-69 (2d Cir. 2009) (finding several opinions from the New York Department of Insurance "instructive").

8

week for the same policyholder." (N.Y. General Counsel Opinion, May 23, 2003, attached to the Connelly Decl. as Ex. G at 2, 1.) The opinion further stated that the policyholder has the option of "purchas[ing] additional workers' compensation insurance in the form of an endorsement, rider, or separate workers' compensation insurance policy to provide the Domestic [employee who works less than forty hours] with such coverage." (*Id.* at 2.)

### III.     The Endorsement to the Policy

At issue in this case is an endorsement, entitled "Worker's Compensation Selected Residence Employee," that was included in the Policy (the "Endorsement"). (Am. Compl., Ex. B.) In the Endorsement, defendant "agree[d] with respect to residence employees": (1) "to pay when due all benefits required of you [i.e., the Policyholder] by the New York Workers Compensation Law," and (2) "to pay on your behalf all sums which you shall become legally obligated to pay as damages because of bodily injury sustained by a covered residence employee arising out of and in the course of employment by you . . . ." (*Id.*) The Endorsement set forth the following definition of the term "residence employee":

> Residence employee as used in this endorsement means your employee who is both:
>
> (a) engaged in regular employment of less than 40 hours per week or is engaged in casual employment; and
>
> (b) defined under the New York Workers Compensation Law as an employee for whom workers compensation benefits must be provided.
>
> This endorsement does not constitute a voluntary election of coverage.

(*Id.*)

9

Defendant asserts that the Endorsement "conforms precisely to the requirements of Insurance Law Section 3420(j)(1)," (Def.'s Mem. at 7), in that it defines a "Residence Employee" who is entitled to coverage pursuant to the Endorsement as an employee who is both (1) "engaged in regular employment of less than 40 hours per week," and (2) "defined under the New York Workers Compensation Law as an employee for whom workers compensation benefits must be provided." (Am. Compl., Ex. B.) The Endorsement's statement that it "does not constitute a voluntary election of coverage," (*id.*), tracks the second-quoted paragraph of New York Insurance Law § 3420(j)(1), above.

Although the Amended Complaint does not contain any allegations regarding the number of hours per week DeLeon worked for plaintiff, it is clear from plaintiff's legal brief that it is his position that she worked less than forty hours per week. Plaintiff does not dispute, (Pl.'s Opp'n at 13-14), that DeLeon (a domestic employee who worked less than forty hours per week) was not covered by the New York Workers' Compensation Law. Plaintiff also does not dispute defendants' assertion that the Endorsement did not constitute the type of voluntary election of coverage that would bring DeLeon within the purview of the law. (Pl.'s Opp'n at 13-14.)

### IV.  *New York General Business Law Section 349*

Section 349 of the GBL makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state . . . ." N.Y. Gen. Bus. Law § 349(a). To assert a claim under this statute, "a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice." *City of New York v. Smoke-Spirits.Com, Inc.*, 12 N.Y.3d 616, 621 (2009).

"With respect to the first element, the Court of Appeals has held that the plaintiff 'must demonstrate that the acts or practices have a broader impact on consumers at large." *Prue v. Fiber Composites, LLC*, 2012 WL 1314114, at *7 (E.D.N.Y. Apr. 17, 2012) (quoting *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 25 (1995)). "Private contract disputes, unique to the parties, for example, would not fall within the ambit of the statute." *Oswego Laborers' Local 214 Pension Fund*, 85 N.Y.2d at 25.

To meet the requirements of the second element, a plaintiff must show that "defendant is engaging in an act or practice that is deceptive or misleading in a material way." *Id.* "Whether a representation or an omission, the deceptive practice must be 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" *Stutman v. Chem. Bank*, 95 N.Y.2d 24, 29 (2000) (quoting *Oswego Laborers' Local 214 Pension Fund*, 85 N.Y.2d at 26).[5] A deceptive practice "need not rise to the level of common-law fraud" to be actionable, and "reliance is not an element of a section 349 claim." *Id.*

---

[5] Plaintiff relies on a decision rendered by the New York Court of Appeals in 1977, (Pl.'s Opp'n at 10), which articulated the then-relevant standard as follows: "In weighing a statement's capacity, tendency or effect in deceiving or misleading customers, we do not look to the average customer but to the vast multitude which the statutes were enacted to safeguard including the ignorant, the unthinking and the credulous who, in making purchases, do not stop to analyze but are governed by appearances and general impressions." *Guggenheimer v. Ginzburg*, 43 N.Y.2d 268, 273 (1977). In a subsequent decision that expressly "focus[d] on the meaning of the phrase '[d]eceptive acts and practices' as used in General Business Law § 349," however, the Court of Appeals adopted "an objective definition of deceptive acts and practices, whether representations or omissions, limited to those likely to mislead a reasonable consumer acting reasonably under the circumstances." *Oswego Laborers' Local 214 Pension Fund*, 85 N.Y.2d at 26. This objective standard has been repeatedly applied by the Court of Appeals in subsequent opinions and is the appropriate measure. *See, e.g.*, *Stutman*, 95 N.Y.2d at 29; *Gaidon v. Guardian Life Ins. Co. of Am.*, 94 N.Y.2d 330, 344 (1999) (citing *Karlin v. IVF Am.*, 93 N.Y.2d 282, 294 (1999)).

With respect to the third element, "a plaintiff must prove 'actual' injury to recover under the statute, though not necessarily pecuniary harm." *Id.* Moreover, the plaintiff must show some causal link between the misleading or deceptive act and plaintiff's injury. *Id.*

### V. Defendant's Motion to Dismiss Plaintiff's GBL Section 349 Claim is Granted

#### A. Plaintiff has Sufficiently Alleged Consumer-Oriented Activity

As a "threshold" matter, plaintiff has satisfactorily alleged that "the acts of defendant fall within the 'consumer-oriented' ambit of General Business Law § 349." *See Oswego Laborers' Local 214 Pension Fund*, 85 N.Y.2d at 26. Plaintiff alleges that he dealt with Randall, "a State Farm insurance representative," (Am. Compl. ¶ 28), just as any member of the public would have, and was issued the Policy containing a standard form Endorsement.[6] Nothing in the Amended Complaint suggests that the transaction was "unique to these two parties, nor were they private in nature or a single shot transaction." *Id.*; *see also Woodhams v. Allstate Fire & Casualty Co.*, 748 F. Supp. 2d 211, 224-25 (S.D.N.Y. Sept. 28, 2010). Thus, plaintiff has adequately pled the first element of his Section 349 claim.

#### B. Plaintiff has Failed to Sufficiently Allege That Defendant Engaged in Materially Deceptive or Misleading Activity

Plaintiff does not dispute that, as discussed above, because DeLeon was a domestic employee who worked less than forty hours per week and because the Endorsement did not

---

[6] Although this allegation is not specifically pled in the Amended Complaint, the Court takes judicial notice of an April 9, 2001 decision by the State of New York Insurance Department, which approved the form Endorsement submitted to it by State Farm. (Decl. of Luke A. Connelly, dated July 11, 2011 ("Connelly Decl."), Ex. F.) *See Giraldo v. Kessler,* __ F.3d __, 2012 WL 4039831, at *1 (2d Cir. Sept. 14, 2012) ("We also take judicial notice of relevant matters of public record.") (citing *Shmueli v. City of New York*, 424 F.3d 231, 233 (2d Cir. 2005)).

constitute a voluntary election of coverage for her, she was not subject to the Workers' Compensation Law. And plaintiff also does not dispute that the Policy did not, in fact, provide him with coverage for or a defense against DeLeon's workers' compensation claim against him and, therefore, plaintiff's act of notifying State Farm about DeLeon's claim did not trigger State Farm's duty to defend.[7] (*See* Pl.'s Opp'n at 13-14 ("Here, however, Plaintiff's G.B.L. § 349 claim is not based on an allegation that State Farm's refusal to provide a defense is inconsistent with Insurance Law § 3420, or with the terms of the Endorsement.").)

Rather, the thrust of plaintiff's claim is that the Endorsement "is misleading in a material respect," (*id.* at 14):

> The Endorsement states that it provides coverage for residence employees who work less than forty hours per week. [However,] [t]he exclusion of domestic workers [who work less than forty hours per week] from its scope is not clearly stated, and is implied only by reference to the Workers' Compensation Law. The fact that the Endorsement states that it "does not constitute a voluntary election of coverage" is meaningless, unless the consumer is aware that the [Workers' Compensation Law] does not require coverage for domestic employees who work less than 40 hours per week.

(*Id.* (emphasis omitted).) According to plaintiff, "[t]he Endorsement should have stated clearly that there is no workers' compensation coverage for domestic employees, regardless of the number of hours worked each week," and "[d]efendant's failure to inform Plaintiff of the exclusion constitutes a deceptive practice within the meaning of G.B.L. § 349." (*Id.* at 12.)

---

[7] *See George Mulhstock & Co. v. Am. Home Assurance Co.*, 117 A.D.2d 117, 123 (1st Dep't 1986) ("[W]here the facts alleged plainly do not bring the case within the coverage of the policy, there is no obligation to defend.") (internal quotation marks omitted); (Am. Compl., Ex. A at 15 (noting that State Farm will "provide a defense" to plaintiff "[i]f a claim is made . . . for damages . . . to which this coverage applies").)

The Court recognizes that the language set forth in the Endorsement is not a model of clarity, although, the Court notes parenthetically, it appears to have been form language set forth as a matter of course in insurance policies of this type issued by State Farm as pre-approved by the New York State Insurance Department.[8]  Overall, however, the Endorsement language does not rise to the level of "materially misleading" within the meaning of Section 349 of the GBL.

The Second Circuit's decision in *Haber v. St. Paul Guardian Insurance Company*, 137 F.3d 691 (2d Cir. 1998), is instructive on this point.  In that case, the plaintiffs-insureds brought a declaratory judgment action against the defendant-insurer seeking coverage under their homeowner's insurance policy for workers' compensation benefits for their housekeeper, who was injured in the course of her employment.  *Id.* at 693.  At issue was the interpretation of an endorsement to the plaintiffs' insurance policy, which was entitled: "Workers' Compensation, Certain Residence Employees."  *Id.* at 694.  The endorsement defined a "residence employee" using the same language as is present in the Endorsement here, to wit, as an individual who was (1) "engaged in regular employment of less than 40 hours per week," and (2) "defined under New York workers' compensation law as an employee for whom workers' compensation benefits must be provided."  *Id.*  Tellingly, in contrast to the Endorsement at issue here, however, the endorsement in *Haber* did not contain any statement to the effect that, "This endorsement does not constitute a voluntary election of coverage."  *See id.*; *Cf.* Am. Compl., Ex. B.

---

[8] The document attached to the Connelly Declaration as Exhibit F is a March 1, 2001 letter from State Farm addressed to the New York Insurance Department, in which it requests approval for the "revised Workers Compensation Selected Residence Employee Endorsement, FE-7484.1, to replace FE-7484." (Connelly Decl., Ex. F.)  State Farm indicated its intention to use "this filing" for any new business obtained as of May 1, 2001 and any renewals made as of July 1, 2001.  (*Id.*)  The New York Insurance Department approved this language.  (*Id.*)

14

The fact that the definition of "residence employee," as set forth in the endorsement in *Haber*, required a reference to the Workers' Compensation Law did not, in and of itself, concern the Circuit. *See Haber*, 137 F.3d at 696. Indeed, when analyzing the definition of a "residence employee" there, a definition that is identical to the definition contained in the Endorsement here, the Circuit did not find that any ambiguity resulted from the lack of specific language notifying consumers that domestic employees working less than forty hours per week were excluded from the Workers' Compensation Law. *Haber*, 137 F.3d at 695 ("Although domestic workers who work less than forty hours per week would satisfy the first condition of being a 'residence employee' under the terms of the Endorsement, they would not satisfy the second condition, because under section 3(1) (Group 12) [of the Workers' Compensation Law] they are not employees for whom benefits must be provided.").

Given the decision in *Haber*, the Court concludes that defendant's failure to include specific language to that effect does not render the Endorsement unlawfully misleading. Moreover, the title of the Endorsement itself – "Worker's Compensation *Selected* Residence Employee" (Am. Compl., Ex. B (emphasis added)) – "immediately alerts the average person that some but not all residence employees will be covered under the Endorsement." *Haber*, 137 F.3d at 701 (Parker, C.J., dissenting) (discussing endorsement entitled "Workers' Compensation, Certain Residence Employee"). Both the title and the express language of the Endorsement would put a reasonable individual acting reasonably under the circumstances on notice of the need to consult the Workers' Compensation Law to determine whether any particular employee was "defined" by that statute "as an employee for whom workers compensation benefits must be provided." (*See* Am. Compl., Ex. B.)

15

Plaintiff has not provided any case law that would support his assertion that State Farm was required to specifically articulate that domestic workers who worked less than forty hours per week were not covered by the Workers' Compensation Law and, thus, were not included in the Endorsement's definition of a residence employee. The case upon which plaintiff principally relies, *Elacqua v. Physicians' Reciprocal Insurers*, 52 A.D.3d 886, 888-89 (3d Dep't 2008), is wholly distinguishable. In that case, the defendant-insurer had provided legal counsel to the plaintiff-insured for the purpose of defending an underlying malpractice action. The deceptive practice at issue was defendant's failure to inform the plaintiff that a conflict of interest existed between it (as the insurer) and plaintiff and so the plaintiff had the right to select an independent counsel at the defendant's expense. *Id.* at 888. The court found that this omission was deceptive, and violated GBL § 349, because the court had previously ruled that in the event of such a conflict of interest, "the insurer has an *affirmative obligation* to inform the insured of his or her right to select independent counsel." *Id.* (emphasis in the original). State Farm is under no such affirmative obligation to make the disclosure that plaintiff suggests.

The Court notes, as an aside, that the Circuit did find the language of the endorsement in *Haber* to be ambiguous for another reason. Specifically, the second prong of the "residence employee" definition – i.e., an employee for whom benefits must be provided under the workers' compensation law – could include an employee for whom coverage had been voluntarily obtained by his employer and, simultaneously, it was unclear whether the endorsement itself actually constituted such a voluntary election of coverage. *Id.* at 695-96. The defendant in *Haber* argued that the endorsement was added to the insurance policy to comply with New York Insurance Law § 3420(j)(1), and because the endorsement did nothing more than merely track the principles of

16

Section 3420(j), it could not possibly constitute a voluntary election of coverage. *Id.* at 698-99.

The Circuit addressed the defendant's argument on this point, as follows:

> If St. Paul sought to buttress its interpretation of the exclusionary language in the Endorsement with section 3420(j)(1), it should have used unambiguous language in the Endorsement itself. For example, St. Paul could have stated in the Endorsement that it 'does not constitute a voluntary election of coverage under New York Workers' Compensation Law.'

*Id.* at 699-700. Here, as defendant points out, the Endorsement includes exactly the type of language that, according to the Second Circuit's decision in *Haber*, would remove any ambiguity as to whether it does or does not constitute a voluntary election of workers' compensation coverage. (*See* Reply at 6,7.)

Because plaintiff has failed to allege that defendant's distribution of the Endorsement constituted a materially deceptive or misleading practice, he has failed to allege a violation of New York General Business Law Section 349.

*CONCLUSION*

For the reasons set forth above, the Amended Complaint is dismissed in its entirety. Plaintiff has not requested leave to further amend his pleading, which has already been amended once as a matter of course pursuant to Rule 15(a)(1)(B). "When a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint." *Hayden v. County of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999). It is well-settled, however, that "leave to amend a complaint need not be granted when amendment would be futile." *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003). Here, plaintiff has not opposed the dismissal of his claims for declaratory judgment or breach of contract. Moreover, plaintiff's GBL § 349 claim rests entirely on his assertion that the language of the Endorsement was materially misleading and the Court has, for the reasons set forth above, found this assertion to be unpersuasive. Any amendment, therefore, would be futile. Accordingly, the Amended Complaint is hereby dismissed with prejudice. The Clerk of the Court is respectfully directed to close this case.

**SO ORDERED.**

Dated: Central Islip, New York
September 28, 2012                                       /s/
                                                  Denis R. Hurley
                                                  Unites States District Judge